AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of South Dakota

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>USA v. 21-37-05 | )<br>)<br>) Case No. 5:21-mj-50<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ South Dakota _____
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A, attached hereto and incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Evidence of a crime of Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 113(A)(3) & 1153, Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6) & 1153, and Discharge of a Firearm During the Commission of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), as described in ATTACHMENTS A and B, attached hereto and incorporated by reference.

I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before    3/15/21    *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Daneta Wollmann   .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    3/1/21 at 10:30 am    _____
                                                                *Judge's signature*

City and state:    Rapid City, SD    Daneta Wollmann, U.S. Magistrate Judge
                                              *Printed name and title*

cc: AUSA Kelderman - clr

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: 5:21-mj-50 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
Executing officer's signature

_____
Printed name and title

# UNITED STATES DISTRICT COURT
for the
District of South Dakota

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

USA v. 21-37-05

Case No. 5:21-mj-50

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE "ATTACHMENT A", which is attached to and incorporated in this Application and Affidavit.

located in the _____ District of ___South Dakota___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE "ATTACHMENT B", which is attached to and incorporated in this Application and Affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 113(A)(3) & 1153 | Assault with a Dangerous Weapon |
| 18 U.S.C. §§ 113(a)(6) & 1153 | Assault Resulting in Serious Bodily Injury |
| 18 U.S.C. § 924(c)(1)(A)(iii) | Discharge of a Firearm During the Commission of a Crime of Violence |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI SA Erik Doell
*Printed name and title*

Sworn to before me and signed in my presence. via reliable electronic means

Date: 3/1/21

*Judge's signature*

City and state: Rapid City, SD

Daneta Wollmann, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: <br><br> USA v. 21-37-05 | Case No. 5:21-mj-50 <br><br> **REDACTED** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH AND SEIZE

I, Erik Doell being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.  I am a Special Agent with the Federal Bureau of Investigation (FBI) currently assigned to the Minneapolis Division – Rapid City Resident Agency and have been so employed since February 17, 2009. I am currently authorized to investigate matters involving Crimes Committed within Indian Country 18 USC §1153, and Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 113(A)(3), Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6), Discharge of a Firearm During the Commission of a Crime of Violence, In violation of 18 U.S.C. § 924(c)(1)(A)(iii). This affidavit is intended to

show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

3. The property to be searched is a black Samsung Cellular Telephone in a black Otterbox case. The Device is currently located at 3600 Jet Drive, Rapid City, SD 57703 with Evidence Barcode 6510752, as more fully described in Attachment A.

4. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

5. Your affiant learned that on November 10, 2020, Angelo Morales, a/k/a Angelo No Moccasins, was outside a residence in Pine Ridge, South Dakota. Pine Ridge is within the exterior boundaries of the Pine Ridge Reservation. Your affiant learned that at some point in the evening, Charles Schrader and an individual named Louis Winters III approached the home.

6. Your affiant has learned that officers with the Oglala Sioux Tribe Department of Public Safety (OSTDPS) initially were notified of a shooting at ███████████████████ in Pine Ridge, South Dakota. Officer Gabriella Fills The Pipe responded. When she arrived, an individual named Roger Bird flagged her down and pointed Officer Fills The Pipe toward where Morales was on his stomach. Officer Fills The Pipe approached Morales and observed what appeared

2

to be a shotgun injury to his lower back. She noted several small wounds and a large area of plastic stuck to his back. According to her report, which was completed on November 16, 2020, "[w]hen asked who shot him, he stated 'Louis Winters' and when asked about what vehicle he was in he said 'Charlie Schrader Avalanche.'" Officer Oscar Hudspeth also reported that he heard Morales state, when asked who shot him, that it was "Louis Winters." A review of officer body camera video recordings from that time show Morales, while in the presence of several officers and other individuals providing assistance, twice said the name "Louis Winters," though it is difficult to determine what had been asked of him or to whom he was responding when he said that name.

7. Your affiant was notified about the report of the shooting. Your affiant went to the Monument Health Hospital in Rapid City, South Dakota, on November 10, 2020, and November 13, 2020. The first interview was brief because Morales was receiving medical treatment for his injuries. During that interview, Morales informed your affiant that he was physically assaulted by Louis Winters III and shot by Charles Schrader. Morales told your affiant that Winters also tried to shoot Morales, but that the shotgun did not fire.

8. In the second interview, Morales provided more detail. Morales stated he was outside the home in the vicinity of 1098 Crazy Horse Housing, colloquially known in the area as the "Corner Pocket." Morales stated he was aware of a fight between Alex Winters and Alex Winters' girlfriend that had occurred the night before wherein Alex Winters sustained numerous lacerations

3

to his head which required stitches or staples. Alex Winters' girlfriend was Morales' children's mother's sister. Morales informed the FBI that Louis Winters III walked up to him outside of "Corner Pocket" and accosted him.

9. Louis Winters III was angry about what had happened to Alex Winters and believed that Morales had something to do with it. Winters III hit Morales in the face and they scuffled. Morales saw Charles Schrader get out of a white Chevrolet Avalanche. Morales knew this vehicle to be operated by Schrader. Morales saw Schrader get out of the Avalanche with a shotgun. Winters III was telling Schrader to shoot Morales. Morales turned away and Charles Schrader shot him in the back. Winters III then kicked Morales in the face before Winters III and Schrader left in Schrader's Avalanche. Morales also stated that after he fell to the ground, Louis Winters, III kicked him in the face, but mentioned that he believed Schrader and Winters left in Morales' vehicle, a blue 2007 Jeep Liberty, or in Schrader's Avalanche.

10. Because Morales had made statements about "Louis Winters" when law enforcement originally arrived, but in later interviews stated Charles Schrader, Sr., had shot him, the undersigned conducted a third interview of Morales on December 3, 2020. In that interview, as relevant here, Morales stated that the individual he knows as Charles Schrader, Sr., was the person who shot him with the shotgun on November 10, 2010. Morales informed your affiant he said the name "Louis Winters" at the scene, after law enforcement arrived, in order to tell them to be looking for Winters because Winters was the individual

4

who had instigated the incident involving himself, Schrader, and Winters. Morales stated that he was not saying Winters's name in order to indicate Winters had shot him.

11. Investigators learned that there were two individuals with the name Charles Schrader[1]: Charles Schrader Sr. and Charles Schrader Jr. Morales confirmed that the individual he knew as Charles Schrader, Sr., was the individual who fired a shotgun at Morales.

12. Morales sustained gunshot wound injuries to his back, including penetrating wounds from shotgun pellets and gunpowder burns.

13. You affiant is aware of an individual named Charles Schrader, date of birth ▮▮▮, 1966, that is known as Charles Schrader, Sr. The Oglala Sioux Tribe has confirmed that Schrader is an enrolled tribal member.

14. On November 14, 2020, the Rapid City Police Department received an anonymous tip through the department's online reporting system. The information was forwarded to the FBI on November 17. The tip said, "Louis winters the second is out on parole after doing 18 years in prison for murder and he's out now. He recently gave his son Louis Winters the 3rd a gun to go shoot Chico Morales. The shooting happened in pine ridge about 5 days ago and it was Louis Winters the 2nd who gave them the gun to go shoot Chico. He did this 18 years ago and had Lucien Janis killed and now he's doing it again."

---

[1] For continuity, in this affidavit, Charles Schrader refers to the individual here identified as Charles Schrader, Sr.

15. After a criminal complaint and warrant were issued for Charles Schrader, members of the FBI and Rapid City Police Department learned that Charles Schrader had left the Pine Ridge area after the aforementioned shooting. Law enforcement learned that Schrader had gone to Rapid City and was staying in room 116 at the Super 8 Hotel at 2520 Tower Road, Rapid City, SD. Law enforcement conducted surveillance at the hotel and identified Charles Schrader, Torry Ghost Bear and others later identified as Lyle Jacobs, Deirdre Winters, and Brittany Schulte were present and associated with each other.

16. Law enforcement personnel have confirmed with personnel at the Super 8 Hotel that room 116 was rented by another individual at approximately 2:15 AM on November 11, 2020.

17. At approximately 12:59 PM on November 11, 2020, Charles Schrader was observed exiting the hotel and entered a red Ford Focus. Law enforcement conducted a traffic stop of the vehicle. Schrader was arrested on a warrant on a criminal complaint, and upon Schrader's person was a folding knife, a lighter and a wallet.

18. Following the arrest of Schrader, a consent search of the red Ford Focus was conducted. A black Samsung Cellular Telephone in a black Otterbox Case (the Device) was seized from the rear floorboard of the driver's side rear seat. The seat in which Schrader had been occupying prior to his arrest.

19. In your affiant's training and experience, subjects often send messages after the commission of a crime in order to secure a means of escape

from the local area in which the crime occurred. These messages can be saved in the memory of the electronic device. Additionally, location data showing where the device had been may be recoverable during a forensic review of the device.

20.   The Device is currently in storage at 3600 Jet Drive, Rapid City, South Dakota 57703. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Federal Bureau of Investigation.

## **TECHNICAL TERMS**

a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back

7

audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data.

      Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some

PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

21. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of

its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

25. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

26. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

27. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

_[signature]_
Special Agent Erik Doell
Federal Bureau of Investigation

SUBSCRIBED and SWORN to
\_\_\_\_ in my presence
  X   by reliable electronic means
this   1   day of ~~February~~ MARCH, 2021.

_[signature]_
DANETA WOLLMANN
U.S. MAGISTRATE JUDGE

13

## **ATTACHMENT A**

The property to be searched is a black Samsung Cellular Telephone in a black Otterbox case. The Device is currently located at 3600 Jet Drive, Rapid City, South Dakota 57703 with Evidence Barcode: E6510752.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of Crimes Committed within Indian Country 18 U.S.C. § 1153, and Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 113(A)(3), Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6), Discharge of a Firearm During the Commission of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). and involve Charles Schrader Sr. since 11/10/2020, including:

   a. lists of contacts, messages, calls made;

   b. photographs;

   c. applications installed or deleted;

   d. Facebook messages;

   e. any information recording Schrader's schedule or travel from 11/10/2020- to the present;

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law

enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.